Janice KRAGNESS, Respondent,

v.

STATE of Minnesota, Fergus Falls State Hospital (self-insured), Relator.

No. 49227.

Supreme Court of Minnesota.

June 8, 1979.

Jacob E. Forsman, St. Paul, for relator.

DeParcq, Anderson, Perl, Hunegs & Rudquist and Stephen S. Eckman, Minneapolis, for respondent.

Considered and decided by the court en banc without oral argument.

SCOTT, Justice.

The state seeks review of a decision of the Workers' Compensation Court of Appeals, one judge dissenting, awarding compensation to employee for intermittent temporary total disability after September 30, 1973, temporary partial disability at times between April 1974 and April 1976 and temporary total disability from May 26, 1976, to the date of the hearing on July 6, 1977, and continuing thereafter. It urges that employee did not sustain her burden of proving she received a work-related injury which contributed substantially to her disability. Having concluded that the finding she did sustain such an injury has substantial evidentiary support, we affirm.

Fergus Falls State Hospital operated a day camp for its residents in August 1973, and employee, a psychiatric technician who helped and supervised residents in their daily activities, always went with groups attending the camp because she was the only lifeguard on the staff. On August 9, after two other staff members had given some residents a ride in a pontoon boat, the operator of the boat had difficulty slowing the boat as she brought it to the dock. Fearing the boat would strike the dock and the residents would be injured, employee ran into the water and tried to push the boat away from the dock. She did this several times but finally had to stop because she experienced intense pain in her low back. Although she had had a muscle spasm in her back after an automobile accident 14 years earlier and had had some other minor back discomfort in the past, she said she had never experienced pain like this.

In the next weeks she continued to come to work so that the residents could go to camp, but said she could not do her regular duties. The pain in her back subsided considerably, but not completely and she experienced pain upon certain movements.

On August 17 employee bent over in her garden to pick beans and again experienced pain like that she had had on August 9. It again subsided, but on Saturday, September 22, she bent to get an article in her attic and again experienced intense pain. She went to the emergency room at Lake Region Hospital and saw a Dr. Myhre, who prescribed a pain reliever and bed rest. In spite of this order she went to work the next day because she was the only staff member on duty who was licensed to pass out medicines. She lay down when this work was done.

The following day employee went to the Fargo Clinic and because of her intense pain was hospitalized and referred to Dr. Douglas T. Lindsay, an orthopedic surgeon.

Dr. Lindsay found that employee had an unstable lumbosacral joint and spondylolisthesis at the L5–S1 level, a condition which preexisted the incident of August 9 and was probably congenital. Dr. Robert Johnson, a neurosurgeon, also examined her and performed a myelogram which showed evidence of disc protrusion at the L4 and L5–S1 levels. Dr. Johnson performed partial hemilaminectomies on each side at L4 and removed the L5 lamina completely on October 9, and Dr. Lindsay then performed a spinal fusion. A few days later employee was fitted with a postoperative brace and on November 2 was advised she could return to work if she did not lift patients.

After her return to work, employee continued to have back pain and began to have pain in her leg and hip also. X-rays taken in October 1974, a year after the surgery, showed that the graft had not fused into a bony union at employee's lumbosacral joint. Her pain continued, and in July 1975 Dr. Lindsay referred her to the Mayo Clinic. An exercise program prescribed by Dr. Richard S. Bryan, an orthopedic surgeon and associate professor of medicine at Mayo, did not alleviate her pain, so Dr. Bryan performed a second spinal fusion on June 24, 1976. Convalescence from that surgery took considerable time, and X-rays in June 1977 showed that fusion had occurred and that employee's bone was still

healing. Dr. Bryan said her progress had been reasonable but that she has been totally disabled from the time he first saw her and still was in June 1977. He expressed no opinion on the cause of her disability.

Dr. Lindsay expressed the opinion that employee's exertion in the boat incident on August 9, 1973, aggravated and intensified her prior back condition. He said it was common for people with spondylolisthesis to be symptom-free for many years and to have a severe problem after physical activity such as that exertion. He was not aware of the nonwork-related incidents in which she had had intense pain but said he would not doubt that she had pain on other occasions, particularly if they occurred after August 9. He remained of the opinion that that incident aggravated her prior condition and was "the likely starting point" of her problems because she had told him so and because her physical activity at that time was more strenuous than on the subsequent occasions.

Asked what factors contributed substantially to her need for surgery in October 1973, Dr. Johnson said he considered any episode which caused employee pain an aggravation. He had recorded only the bean picking but felt each of the incidents—that one, the boat incident, and the attic episode—could have contributed to her need for surgery. Asked to assume that employee had pushed as hard as she could on the boat on August 9 and had then experienced very sharp pain in her low back, he said that incident was probably the triggering mechanism in her back condition but that all episodes contributed to it.

Dr. Ronald Lampert, also an orthopedic surgeon, said that the boat incident, the bean picking, and the attic episode were equal precipitating causes of employee's disability. He thought she could perform her work of passing out medicines but was restricted from heavy work.

The testimony of Dr. Lindsay and Dr. Johnson that the boat incident aggravated the prior unknown defect in employee's back and was a precipitating cause of her disability and need for surgery several weeks later furnish substantial support for the inference that the incident was a substantial contributing cause of employee's disability. It is thus compensable even if the other incidents also were causes. Even Dr. Lampert's view that it and the two nonwork-related incidents were equal precipitating causes supports that inference. *Roman v. Minneapolis St. Ry. Co.*, 268 Minn. 367, 129 N.W.2d 550 (1964).

The state contends, nevertheless, that employee's testimony about the extent of her disability following that incident is not credible because she did not miss work nor consult a doctor for several weeks, during which the other nonwork-related incidents occurred. The state would also infer that any injury sustained in the incident was insignificant because it was not mentioned in all of the medical histories recorded by the doctors employee saw. While these factors might bear on employee's credibility, that was necessarily assessed by the court of appeals as the trier of fact. The evidence as a whole clearly did not require rejection of her testimony, which together with the opinions of the medical experts leads us to conclude that she sustained her burden of proof.

Employee is allowed attorneys fees of $350.

Affirmed.